We'll now move to our argument calendar. The first case is United States versus Overton. Let me make sure we've got counsel on the line. OK, we have appellate counsel. Morning. Yes. OK, Mr. Brissenden and for the government. Sorry, your honor, Monica Richards for the United States. OK, great. All right. So I don't know what I did with my sheet of paper. How much did you reserve for a rebuttal, Mr. Brissenden? Two minutes, your honor. OK, so you've got two minutes for rebuttal. So eight minutes out of the gate, the floor is yours. Thank you, your honor. May it please the court, Matthew Brissenden for Mr. Overton. This appeal involves a Brady violation, which only came to light after the district court had provisionally accepted the defendant's plea. And it raises some important questions about when a defendant should be entitled to withdraw his plea. The first being whether he was obligated to demonstrate fair and just reasons under Rule 11 D2, whereas plea had only been provisionally accepted. And what I would say is that under Rule 11, there is no such thing as a provisional acceptance. The district court had three options. It could accept the plea, it could reject the plea, or it could defer its acceptance. And the record is clear here that what in fact happened is that the district court deferred acceptance. It expressly told the defendant that there was an additional step which it needed to take before its acceptance of the plea would be final. And there's something else that's extremely important on the record, and I want to make sure I drew the court's attention to this fact. Mr. Overton pled guilty to a conspiracy to commit sex trafficking. That is an offense that carries with it a maximum sentence of life in prison. Now under the bail statute, under 18 U.S.C. 3143, once that plea was accepted, because it carried with it a life sentence, the court was obligated to remand Mr. Overton. It did not have any discretion under the statute to allow him to remain free on bail. And yet at the end of the plea proceeding, that's precisely what happened. And so there's this important point in the record, it's at 301 of the appendix, where the prosecutor himself acknowledges that the reason Mr. Overton is still being allowed on bail is because the plea hasn't been accepted. The prosecutor states, Your Honor, the parties had previously been under the understanding that this was a mandatory remand situation. Although I understand from speaking with your clerks, because of the provisional nature of the plea and probation's recommendation, the court is inclined to continue the defendant on his current bond. That is, in my view, a powerful, and I would suggest determinative fact here, that demonstrates that what happened is that this plea was not accepted. That the court deferred its decision, and as a result, the defendant remained free under 11 D. 1 to withdraw his plea for any reason. Let me ask you, was it at any point was Mr. Overton remanded prior to sentencing? He was remanded at sentencing. Not until after sentencing, right? At sentencing. And at sentencing, of course, the court actually noted that under the statute, it had no discretion to allow him out on bail. So basically, we have the denial of Mr. Overton's motion to withdraw his appeal in November of 2020. In that written order, the court states in its caption that it is accepting his plea, and then at the very next appearance that Mr. Overton makes, he's remanded according to the statute. So I'd say that that is an extremely important fact here. Pivoting, I guess, to my second point, unless the court has additional questions, is that even if Rule 11 D. 2 did apply, I would submit that the lower court abused its discretion in holding that Mr. Overton had failed to demonstrate fair and just reasons. And in particular, in a point… Hold on for a second, Mr. Brissenden, just because I'm trying to make sure I didn't miss something. Did you argue this bail point in your brief? So I obviously advanced the argument in my brief that 11 D. 1 applied. To be perfectly frank, as I'm reviewing the record this weekend, that is a fact that particularly jumped out at me. So I didn't… I didn't see any mention of bail in the brief at all. I did not mention what occurred at the end of that plea allocation, but what I'd submit is what this is is additional evidence in further of the legal argument, which I did make, and that is that what the court did here was defer its decision on accepting the plea. That's just one more piece of evidence, in addition, of course, to the court's own words. But it's not just one more piece of evidence. You said it's determinative. You said a minute ago that it was very important. And your adversary has not had a chance to respond to this because it wasn't in your papers. I acknowledge that, Your Honor, and the truth is this is a fact that jumped out at me this weekend as I was preparing for argument, and I was particularly struck by that point. If counsel is interested in a 28J submission, obviously, you know, I would not object to that if they want to address this additional fact. It wouldn't really be a 28J. I guess it would be a supplemental brief to address a point that you didn't make. The other argument is have you waived it or forfeited it. Well, I guess my position, Your Honor, would be that this is not so much a new argument as new evidence from the record that supports the argument that I've been making. You know, I've been pointing to the point that this term provisional was used over and over again, and this is one more example of how that was used. Well, look, I mean, the use of the word provisional, I don't think is dispositive, right? We've said previously, there's no magic words. You don't have to click your heels three times. And so it does seem to be a pretty strong point, which is that if everybody thought that this plea had been accepted, he'd have been remanded, and neither the government nor the court thought about that now, or thought to remand him anyway. Maybe everybody was just sort of playing fast and loose with the harsh requirements of the law, but your view is that this supports the conclusion that there was no acceptance until the day of the sentencing. It does, together with the words of the court itself, of course, you know, the fact that the judge told the defendant that there was an additional step which would need to be taken before its acceptance of the plea was fine. Well, but look, I mean, acceptance of the plea agreement is a necessary step, and there's a distinction between a plea and a plea agreement. It seems to me there was nothing left to decide here, other than whether the judge was going to go along with the stipulated terms in the plea agreement, the sentencing stipulation, right? I agree that that was the primary issue. Now, of course, if the judge... Anything else? Were there any other Rule 11 requirements that were being held off? Like, I want to make sure that you are knowing and voluntary, that you're competent, that you understand your right to a jury, any of that? No, I have not advanced any argument along those lines, Your Honor. But the words that the court used are important. In fact, it's all we have to go on here. The court did not say that it was provisionally accepting the plea agreement. It was very clear in stating that it was provisionally accepting the plea itself, and that there was a final step it needed to take, not before it accepted the plea agreement, but before the plea itself was finalized. But that's false, right? That's not a step that's required for a plea, unless it's a Rule 11c plea agreement, and then the agreement has to be accepted, not the plea. That is true. But in this case, what the judge indicated is that he was deferring acceptance of the plea itself, as opposed to the plea agreement. All right, but that's my point. That might be sort of careless language, but the fact of Rule 11 is that if the judge doesn't accept the plea agreement, he has to allow the defendant to withdraw his plea, right? That's correct, Your Honor. Okay, so that would suggest to me that really this is a reference to accepting the plea agreement, not the plea, because there were no other requirements of a plea that were outstanding. Well, I would submit certainly what happened at the end of the proceeding, as far as not remandering Mr. Overton, as I indicated, is strong evidence to the contrary. That's a good point. I mean, I agree. I think it would have been good to be brief, but that's the point I want to hear the government respond to. Are there any other questions for Mr. Brissenden? All right. Mr. Brissenden, you've reserved two minutes for rebuttal.  We'll hear from the government. Ms. Richards, maybe you should start with the point about why wasn't he remanded. If you thought that there was a plea that had been accepted, the law required you to seek his remand, didn't it? Well, Your Honor, what we don't have in this record, I appreciate the point having been made, it actually came up during my moot court as well, that that was in the record at page A301, as my colleague pointed out. But what's not in the record is the discussion that happens between the United States Attorney's Office, the clerks, the court's clerks, and then the sort of the off record about whether or not he would be remanded. What's in there is the United States Attorney objecting to the concept that he wasn't subject to remand. I see exactly what he's saying is that it was the Assistant U.S. Attorney who used the language about provisional acceptance. But what the judge said is that A302, and the judge said that he reviewed probation's report and recommendation on A302 in the middle. Also, this is a conspiracy charge. It's not a substantive charge. And it's 1594, the plea charge, is not enumerated as a crime of violence under the statute. So that was the judge's reason that this was a plea to 1594, a conspiracy charge, not enumerated under the statute, and just carries over with, that'll be my ruling, same conditions. He'd already been released. So sort of a mixture of both things here. As Your Honor noted, maybe because Mr. Overton had been compliant, the government didn't make a bigger point about this. It was discussed. Everybody thought he was going to be subject to remand. And then the judge stuck firm on the concept that it wasn't required under 1594. I have not done, obviously, any briefing or addressed the issue for this court's education or for my own personal, but I could, if that's something the court wants to hear about, I don't think that's necessary because I disagree that it's determinative. I don't think what happened with regard to bail or no bail is determinative of whether or not the plea was accepted or not accepted. I think that analysis hinges on exactly as Your Honor Judge Sullivan pointed out, that the options with regard to a plea are accept or reject. What Mr. Brissenden started out with was the obligations under Rule 11, I'm sorry, the formulation under Rule 11C3, which strictly relates to plea agreements. So plea agreements can be accepted, deferred, or rejected under 11C3, but pleas can be accepted or rejected. Wait, wait, wait. What's your basis for saying that? So if I have a plea hearing, I mean, another guy comes in to plea, and then he is advised of his rights, we go through all the Rule 11 requirements, which I don't know that he did here, candidly. But then I say, well, I want to withhold this because I have some questions about his competence. I want to see whether, I want to have him go be evaluated because I'm not sure that he was competent. If that's the case, then I can defer, right? I'm not sure again, defer or provisional, but Your Honor, at that point, I would say, right, the plea has not been accepted, but that's not what happened here. I made it too simple. I was going with the facts of this case. I totally agree with Your Honor that there are instances where the judge wants more in order to comply with Rule 11, B1, A through O requirements of what notice has been provided. And then B2, finding whether or not it's voluntary, knowing that would be Your Honor's example. B3 would be whether or not there's a factual basis. Sometimes judges want more in terms of the factual basis, and that happens. None of that happened here. He accepted the plea as knowing involuntary, accepted the factual basis, and said, but this is different. It's a Rule 11, C1C. I'm going to defer on that. I'm not going to do that. I'm not going to accept the, and again, it was an artful, but I'm not, I'm going to defer with regard to that plea agreement. Well, he did say, he went a little further than that. He said, I will accept it, comma, but provisionally, comma, because the provisional part comes with my determining that I can sentence you according to the terms and conditions of the plea agreement. It seems to me that he accepted every aspect of the plea. He was satisfied with every aspect of this. The only thing he was holding open was the plea agreement question. And that's precisely within the terms of the C1C, isn't it? I agree, Your Honor. C1C plea? Yes, and he set a date for sentencing. Yeah. If he uses the term provisionally, I can see why it is provisional in a sense, because it's not final, final. But it's, it is, it's, it's, it's final subject to one, one further development. And that development was different, of course, from what the, what the appellate is arguing here. The appellate arguing here is another wrinkle here, and that's the Brady question. But, but nobody's, nobody's questioning that ultimately there was a plea based upon the acceptance based upon the plea agreement, which, which the judge was comfortable with at the end. And I think, thank you, Your Honor, I think right until this moment, I mean, that's, that's why this court's review, and I just highlight that at this point, the court's well aware of it, but the reviews for plain error, none of this was raised before. So, whether or not there was an error that's plain does require that first step, as Your Honor just did, in terms of the analysis. Was there an error that was plain here? No. One of the things that I looked at was to see whether all the requirements of 11B were complied with. And it did seem to me that Mr. Overton wasn't advised of his right to confront and cross examine witnesses, to be protected from compelled testimony, to testify himself if he wanted, to present evidence if he wanted, to compel the attendance of witnesses. None of that seemed to have been covered. Now it's not been, nobody's made a point of this in the brief, no one made a point of this below, but I think it'd be easy to argue that this is, was in fact, a plea, if you covered all those things, but it seems like things are casual in the Western District. Why is that? Oh, I'm sorry, Your Honor, I can't accept that. Okay, so then why aren't you, why aren't prosecutors going through a checklist, as we've said before, you've got to do, because this is not just unnecessary stuff. Why isn't that happening? Maybe you could explain that to me. With regard to this case, Your Honor, I'll accept the admonishment and I will definitely pass it on to the attorney. It's not the first time though, right? It's not the first time we've admonished. I understand, Your Honor. Taking a look at when this plea took place, I would say to Your Honor, I believe it took place in, well before, and I would ask, I would question this took place in 2018 or 19, Your Honor. And I, as having been in this job well since that time, I can assure Your Honor that that message has been carried through. And if you catch us on a case since, in the last two years, three years, four years, I would, I will be surprised. I guess I can't say it 100% won't happen, but I will be surprised. I would also suggest to Your Honor, again, as the court knows, that it is subject to harmless error and it was waived. So there's two reasons why on this record, again, accepting what the court has noted, but on this record, it would be very difficult, impossible, really, to prove that it was anything other than harmless, given all of the litigation that's happened here and it hasn't been raised. What has been raised is the question, now I've lost my track, I'm sorry. What has been raised is the question then with regard to what happened after the plea was deferred and then the defendant moved to withdraw the plea. And the judge proceeded on whether or not there was a fair and just reason for withdrawal under 11D2B and found that there was no fair and just reason. The court made a very clear finding with regard to the Brady violation and that is subject to this court's review for clear error, whether or not the factual findings were clearly erroneous. Again, what happened here, the judge outlined its numerous reasons, they're set forth in its opinion, for why there was no Brady violation. The district court specifically up front found, even though it wasn't required, but up front found no prosecutorial misconduct and how that was handled and then moved on to whether or not there was clear, whether or not there was the Brady violation. And I think I'll stop unless there's further questions. I would have you just on the other subject, United States versus Gonzalez, which was decided in 2018 in June, almost six months, about six months before the guilty plea allocution in this case. Thank you, Your Honor, for noting that. That's the case in which we said compliance with Rule 11 is not a difficult task and district courts can easily use a standard script for accepting the guilty pleas, which covers all the required information to ensure their conformity with the rule. We've also made clear that it is not just the judge's responsibility, it's also the government's responsibility. So, nobody should feel above having a checklist when it's important rights like set forth in Rule 11. Thank you, Your Honor. Okay. All right, Mr. Brissenden. Your Honor, with the court's permission, I did want to touch briefly on my second point, because I got sort of sidetracked on the first argument here. I didn't have a chance to address it. And that is whether or not if 11D2 did apply, whether or not Mr. Overton demonstrated fair and just reasons to withdraw his plea. And I guess what disturbs me is that if we accept the people's argument here, that is that Carol Craft's statement was not material because of the strength of the other evidence which the government had in support of their case. It means that there was never any Brady violation, that the government was never under any obligation to turn this material over to Defense Counsel. And I find that an extremely difficult pill to swallow under the circumstances of this case. I'll note that Defense Counsel made repeated and expressed requirements for precisely this material over the course of multiple years, and that on each occasion, the government denied that it existed, and it stonewalled. Now, I don't know what the line prosecutors knew in this case. I don't know what kind of inquiries they made of their agent, in part because the district court declined a hearing in that regard. But to my mind, what occurred here is profoundly troubling. And for the government to ask for this court's endorsement to rule that this statement was not material and that there was no obligation to turn it over, you know, I find that an extremely difficult proposition to accept. And the last thing that I want to say is this. Mr. Overton's obligation here, to the extent that 11D2 did apply, his obligation here was to show that there was a reasonable probability of a different outcome. That's not even a preponderance standard, Your Honor. He didn't even need to demonstrate that there was a 50% chance that he would have gone to trial if he had this material. The only question is whether what occurred undermines our faith in the outcome of these proceedings. And to my mind, Mr. Overton undoubtedly met that standard here. Why would this have made such a difference? I mean, what he pled to did not involve conduct really with this so-called exculpatory witness, right? She wasn't a minor. The minor who's the victim of the crime that he pled guilty to wasn't referenced at all in the statement made by the witness, right? The important point, Your Honor, is that this person was a witness to the events underlying the government's indictment. And having witnessed those events, she came in and told the government essentially that Mr. Overton was not doing what the government was accusing him of doing, that he was not guilty of what this other witness said he did. And so there's no question that this material was exculpatory. Granted, it didn't come from the victim herself, but it came from a party who was a witness to these events. So this was not impeachment material, Your Honor. This went directly to the heart of Mr. Overton's case. And there's no question in looking at 12 years that subjectively, if he had had this material, he would have taken a different course. This material was important to Mr. Overton. The other thing that needs to go into this calculation is this analysis can't just be about what other evidence the government had, right? As I said, it's a subjective question as to what Mr. Overton would have done. And part of that analysis is what was the plea offer that he was ultimately extended? Now, did Mr. Overton benefit from this? Mr. Brisson, at least for me, you went sort of silent and then for a while. So start that point over again. The connection was bad. I'm sorry, Your Honor. I don't know. Can you hear me now, Your Honor? Now I can. Yes. OK, thank you. And I don't know the last thing that you heard me say. But the point that I was trying to make is that in analyzing Mr. Overton's decision making here, one of the things we need to look at is the ultimate plea that was extended to him. Had he gone to trial, he was facing a 10 year mandatory minimum. But the plea agreement itself required him to stipulate to a minimum sentence of 90 months. So while there was certainly some benefits, Mr. Overton, by accepting this plea agreement, it wasn't as if this was the plea offer of the century. And it required him to accept a significant sentence. And so it would not have been unreasonable or unrational for a defendant, especially a defendant who thinks the government is playing fast and loose with the Brady obligations, to challenge the government's case and to put them to the burden of proving his guilt at trial beyond a reasonable doubt. And I think that's precisely what he would have done as he's demonstrated over these many years had he had this material. OK, well, thank you both. We will reserve decision.